

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-24-2004

# Dukuly v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-1497

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Dukuly v. Atty Gen USA" (2004). *2004 Decisions.* Paper 919.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/919

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1497

YOUSUFF DUKULY,
Petitioner

v.

JOHN ASHCROFT,
ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

On Petition for Review of an Order of the
Immigration and Naturalization Service
Board of Immigration Appeals
(BIA No. A75-838-806)

Argued February 25, 2004

Before:  RENDELL, BARRY and FISHER, Circuit Judges.

(Filed March 24, 2004)

Daniel G. Anna    **[ARGUED]**
Anna & Anna
533-A Darlington Road
Media, PA  19063
  *Counsel for Petitioner*

John Ashcroft
Richard M. Evans
Michael P. Lindemann
Daniel E. Goldman    **[ARGUED]**
U.S. Department of Justice
Office of Immigration Litigation
Ben Franklin Station
P.O. Box 878, Civil Division
Washington, DC  20044

Michael T. Dougherty
U.S. Department of Justice
Office of Immigration Litigation
1331 Pennsylvania Avenue, N.W.
Washington, DC  20530
   *Counsel for Respondent*

---

OPINION OF THE COURT

---

RENDELL, Circuit Judge.

Yousuff Dukuly, a citizen of Liberia, petitions for review of a decision by the Board of Immigration Appeals ("BIA") denying Dukuly's application for asylum and withholding of deportation.  In so ruling, the BIA affirmed without opinion the findings of the Immigration Judge ("IJ") that Dukuly lacked credibility because he provided inconsistent statements and fabricated documents to the Court, and because he failed to produce sworn testimony from a key witness.  Dukuly timely filed this Petition for Review.  We have jurisdiction under 8 U.S.C. § 1252.  We will deny the petition for review.

2

I.

Dukuly was the sole witness and he provided a narrative of his experiences. In 1997, after receiving training from the Liberian National Security Agency, he was assigned to the "VIP Security Section" at a compound occupied by a Liberian councilman. Dukuly subsequently provided ECOMOG, an African supervisory organization, with an anonymous tip that a large cache of weapons and ammunition was being stored at the compound. Consequently, ECOMOG troops invaded the facility, found the arms and ammunition, and arrested the councilman.

During the invasion of the compound, Dukuly fled with his family to Guinea. Upon his return to Liberia a few weeks later, Dukuly was interrogated by a national security official regarding any part he may have played in informing ECOMOG about the weapons cache. According to Dukuly, during the course of the interrogation he was severely beaten and urinated upon by guards. Dukuly was later released and taken to a friend's house to recuperate. No one was allowed to visit Dukuly for the following two weeks except his friend, Thompson Swaray.[1]

Soon after Dukuly recovered from the interrogation, he returned to work at the request of his employers. At some point thereafter, as Dukuly was driving home from work, five soldiers in a jeep stopped him and tried to force him into their vehicle.

---

[1] "Thompson Swaray" is also referred to as "Thompson," "Mr. Thompson," and "Foumba Swaray" throughout the record. According to Dukuly's counsel, "Thompson" is Swaray's "Christian nickname." Like the IJ, we will refer to him as "Thompson."

Witnesses immediately informed ECOMOG about the situation, and troops rescued him from the attempted abduction. Dukuly subsequently went into hiding. He learned from Thompson that two days later, the same five soldiers and a general invaded Dukuly's home. The general allegedly raped Dukuly's wife, who had just given birth to a child, and the soldiers stole valuables from the home. Two months later, in June 1997, Liberian soldiers allegedly captured and raped Dukuly's sister.[2] During that incident, the soldiers told Dukuly's sister that her entire family would suffer because Dukuly had disgraced the councilman by informing ECOMOG about the cache of weapons formerly stored at his compound.

Meanwhile, as he was in hiding, Dukuly obtained a visa under a false name. He then traveled to the United States where he was admitted as a nonimmigrant visitor for business on June 18, 1997. The visa authorized Dukuly to remain in the States no later than September 6, 1997 – however, he overstayed the visa and thus would have been removed but for the fact that he completed an application for asylum in late September 1997. The IJ subsequently reviewed Dukuly's application. After holding three separate hearings regarding Dukuly's case, the IJ eventually denied his application and withholding of removal, but granted his application for voluntary departure. Dukuly appealed the IJ's decision to the BIA, and the BIA affirmed the IJ's decision without

---

[2] Dukuly later testified that he learned about both rapes through his friend, Thompson. He learned about his wife's rape in early April and his sister's rape in July.

further opinion.

In his decision, the IJ stated that he found Dukuly's testimony "fairly persuasive." Nevertheless, he ultimately determined that Dukuly's credibility was "fatally damaged" because Dukuly presented the Court with inconsistent statements and fabricated documents, and because Dukuly failed to produce sworn testimony from Thompson.

First, the IJ noted that Dukuly never mentioned the rapes of his wife and sister in his asylum application. Instead, the application merely indicates that Dukuly's wife had been threatened with rape – not that she had actually been raped. Furthermore, the application indicates that Dukuly's sister had been arrested, detained and interrogated – but not that she had been raped. When asked about these omissions, Dukuly testified that they were a result of the fact that he had been hurried and stressed when he filled out the application.

Second, the IJ mentioned that at one point, Dukuly testified that when his wife was raped on April 27th, his newborn child was only a few days old – yet at another point in his testimony, Dukuly said that the baby was born on April 1st. Dukuly offered no explanation for this inconsistency.

Third, the IJ discussed at length two documents which had been entered into evidence during Dukuly's hearings. The first is a report from the American Embassy in Monrovia, wherein it is confirmed that the John F. Kennedy Medical Center in which Dukuly claims his sister was treated for rape does in fact exist. However, according to

the Embassy, the Center has no records of his sister's admission during the period in question. The report also indicates that Dukuly's wife received treatment at a rape clinic, but that there was a discrepancy with regard to medical records concerning her treatment.

The second document, a letter from an administrator at the Kennedy Medical Center, states that Dukuly's sister was treated for rape at the Japanese Liberian Friendship Hospital – not at the Kennedy Medical Center. More notably, the letter indicates that correspondence previously submitted to the IJ by Dukuly as evidence of his sister's treatment was completely fabricated.

Finally, the IJ noted that, at an earlier hearing, the IJ had encouraged Dukuly to either produce Thompson as a witness at the next hearing, or at least produce a signed and sworn affidavit from him. Despite this suggestion, Dukuly failed to do so.

Accordingly, the IJ denied Dukuly's application for asylum. Dukuly filed this timely appeal.

## II.

Dukuly makes three main arguments on appeal: 1) the IJ misapplied the law in determining that Dukuly submitted falsified documents to the Court; 2) the IJ erred in finding Dukuly not credible; and 3) the IJ erred in denying asylum to Dukuly.[3] In light of

---

[3] Dukuly makes four additional arguments, all of which lack sufficient merit to warrant detailed discussion. First, he contends that the IJ erred in finding that Dukuly made insufficient efforts to obtain evidence in support of his case. However, nowhere in his decision did the IJ conclude that Dukuly made such insufficient efforts. Rather, the IJ found that the evidence which Dukuly did produce lacked credibility.

the standard we must apply to an IJ's decision regarding the evidence before him in an asylum proceeding, after reviewing the relevant portions of the record, we conclude that these arguments lack merit.

Where the BIA affirms without opinion an IJ's decision, "the IJ's opinion effectively becomes the BIA's, and, accordingly, [we] must review the IJ's decision." Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001). In the context of asylum cases, adverse credibility determinations are reviewed under a substantial evidence standard. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (citing Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998)). In other words, a reviewing court must sustain an adverse credibility determination if there is substantial evidence in the record to

---

Second, Dukuly argues that the BIA erred by not considering additional documents that Dukuly submitted to the BIA in August and October 1999. Yet nothing in the record suggests that these documents were accompanied by a motion to reopen or to remand in conformity with the BIA's regulations, currently codified at 8 C.F.R. §§ 1003.2(a)-(c) (2003). Because we are not at liberty to consider additional evidence on appeal, see 8 U.S.C.A. § 1252(a)(1), this argument must fail.

Third, Dukuly contends that the IJ violated his due process rights in failing to grant Dukuly additional time to present evidence. However, at oral argument, Dukuly's counsel conceded that Dukuly's attorney never requested any additional time from the IJ. We do not see how Dukuly's due process rights were implicated when he did not even seek the time he says he was deprived of.

Finally, Dukuly argues that this Court should adjust his status to "legal permanent resident" based on Dukuly's recent marriage to a United States citizen. Again, this issue is raised for the first time on appeal. Dukuly has not indicated that he submitted the necessary documents in support of this argument to the BIA in conformity with its regulations. Thus, he has failed to exhaust his available remedies, leaving us without jurisdiction to consider this argument. Xie v. Aschroft, 357 F.3d 239, 246 n.8 (3d Cir. 2004).

support it. <u>Gao</u>, 299 F.3d at 272 (citing <u>Senathirajah v. INS</u>, 157 F.3d 210, 216 (3d Cir. 1998)). Under this standard, such a determination must be upheld unless "'any reasonable adjudicator would be compelled to conclude to the contrary.'" <u>Gao</u>, 299 F.3d at 272 (quoting 8 U.S.C. § 1252(b)(4)(B)).

Under 8 U.S.C. § 1101(a)(42), an otherwise removable alien may be granted asylum if he demonstrates that he is a "refugee," defined as "any person . . . unable or unwilling to return to . . . [his or her] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." An applicant for asylum can demonstrate that he has a well-founded fear of future persecution by showing that he has "a genuine fear, and that a reasonable person in [his] circumstances would fear persecution if returned to [his] native country." <u>Gao</u>, 299 F.3d at 272 (citing <u>Elnager v. INS</u>, 930 F.2d 784, 786 (9th Cir. 1991)). An applicant claiming to be a refugee has the burden of supporting his asylum claim with credible evidence. <u>Gao</u>, 299 F.3d at 272 (citing <u>Abdille v. Ashcroft</u>, 242 F.3d 477, 482 (3d Cir. 2001)). Indeed, a persecution claim that lacks credibility "cannot satisfy the burdens of proof and persuasion necessary to establish eligibility for asylum or withholding of deportation.'" <u>Xie</u>, 359 F.3d at 241 (citing <u>Matter of M-S-</u>, 21 I. & N. Dec. 125 (BIA 1995)).

An asylum applicant's "consistent and detailed testimony can be sufficient to meet the burden of establishing persecution." <u>In Re O-D-</u>, 21 I. & N. Dec. 1079, 1081

8

(BIA 1998) (citations omitted). On the other hand, the production of counterfeit documents, in the absence of an explanation concerning such production, "creates serious doubts regarding the [applicant's] overall credibility." Id. at 1083 (citations omitted).

First, Dukuly argues that the IJ misapplied the law in determining that he submitted falsified documents to the Court. He asserts that, in In Re O-D-, a case that the IJ relied upon, forensic experts made the determination that the documents at issue were counterfeit. Id. at 1079. Thus, Dukuly argues, the IJ in this case should not have relied on the correspondence from the American Embassy and the John F. Kennedy Medical Center, because the authors of these communications (who reviewed Dukuly's allegedly counterfeit documents) were not forensic experts. However, because the Federal Rules of Evidence do not apply in asylum proceedings, the IJ was not obligated to establish the documents' authenticity through the testimony of forensic experts. See Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003). Indeed, in an asylum proceeding, the "'test for admissibility of evidence . . . is whether the evidence is probative and whether its use is fundamentally fair . . . .'" Id. (quoting Bustos-Torres v. INS, 898 F.2d 1053, 1055 (5th Cir. 1990)); see also 8 C.F.R. § 1240.7(a) (2003) (noting that an IJ may receive in evidence "any oral or written statement that is material and relevant to any issue in the case . . . ."). Because there is no evidence that admission of the correspondence was unfair or that the documents lacked probative value, we find that the IJ properly

9

considered them in making his determination.[4]

Second, Dukuly argues that the IJ erred in finding him not credible. Although the IJ did indicate that he found Dukuly's testimony about the events at the compound "fairly persuasive," the IJ ultimately based his adverse credibility finding on the entirety of the record. In particular, the IJ focused on Dukuly's inconsistent and at times incoherent statements, the falsified documents he presented to the Court, and the fact that sworn testimony from a key witness was never provided. Because the combination of these elements constitutes the "substantial evidence" necessary to support an adverse credibility determination, and because we find that no reasonable adjudicator would be compelled to conclude to the contrary, we will uphold the IJ's determination.

Finally, Dukuly contends that the IJ erred in denying his application for asylum and withholding of deportation. However, in light of the IJ's adverse credibility determination, we find no error in the IJ's denial of Dukuly's application for asylum and withholding of deportation.

III.

Accordingly, we will deny the petition for review.

---

[4] Dukuly also argues that, because he was not aware that the documents he presented were fraudulent, the IJ should not have relied on the fact that they were when he made his credibility determination. However, it is clear that Dukuly bore the burden of proving his claim with credible evidence. Gao, 299 F.3d at 272 (citation omitted). Because there was some evidence that the counterfeit documents Dukuly produced were incredible, this contention is without merit.

10